IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MIRIAM HERRING, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:04-CV-1563-D |
| VS. | § | |
| | § | |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY, | § | |
| | § | |
| Defendant. | § | |

MEMORANDUM OPINION

Plaintiff Miriam Herring ("Herring") brings this action under § 205(g) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits and supplemental security income benefits under titles II and XVI of the Act. Concluding that Herring has failed to demonstrate reversible error, the decision is AFFIRMED.

I

Herring was born December 24, 1982. She applied for disability insurance benefits and supplemental security income benefits on April 12, 2002, with a protective filing date of March 27, 2002 for the supplemental security income benefits, alleging that she became disabled on February 25, 2002 because of mental illness. Herring has a high school education but no past relevant work experience, although she has worked at a movie theater,

department store, and pizza restaurant. Her application was denied initially and on reconsideration, and she requested a hearing. The Administrative Law Judge ("ALJ") conducted a hearing and denied her claim. He found at step two of the five-step process that her bipolar disorder was a severe mental impairment; found at step three that it was not severe enough to meet or medically equal an impairment in the Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1; found at step four that she retained the residual functional capacity ("RFC") to work at all exertional levels, except that she is limited to jobs requiring only simple 1-2 tasks;[1] and, at step five, shifted the burden to the Commissioner and, using the Medical-Vocational Guidelines of Subpart P, Appendix 2, determined that, despite her nonexertional limitations, she could perform a significant number of jobs in the national economy and was not disabled ("that the erosion of [her] occupational base is so slight that a sufficient occupational base remains."). R. 16.

Herring sought review by the Appeals Council, which denied her request. The ALJ's decision thus became the final decision of the

---

[1]In his finding that supported this conclusion, *see* R. 14, the ALJ did not explicitly cite SSR 85-15, 1985 WL 56857 (S.S.A.) (1985), but he substantially tracked its language, finding that Herring "retain[ed] the ability to meet the basic mental demands of competitive, remunerative, unskilled work, to include the ability (on a sustained basis) to understand, remember, and carry out simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting." R. 14.

Commissioner. Herring now seeks judicial review, raising two arguments: first, the ALJ’s finding that she was not wholly credible is not supported by substantial evidence; and second, the ALJ’s failure to give controlling weight to the medical evidence from her treating physician is not supported by substantial evidence.

II

This court’s review of the Commissioner’s decision is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards to evaluate the evidence. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995) (per curiam). “The Commissioner’s decision is granted great deference and will not be disturbed unless the reviewing court cannot find substantial evidence in the record to support the Commissioner's decision or finds that the Commissioner made an error of law.” *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (footnote omitted).

“The court may not reweigh the evidence or try the issues de novo or substitute its judgment for that of the [Commissioner].” *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). “If the Commissioner's findings are supported by substantial evidence, then the findings are conclusive and the Commissioner’s decision must be affirmed.” *Martinez*, 64 F.3d at 173. “Substantial evidence is

‘such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.’” *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). “It is more than a mere scintilla, and less than a preponderance.” *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993) (citing *Moore v. Sullivan*, 919 F.2d 901, 904 (5th Cir. 1990) (per curiam)). “To make a finding of ‘no substantial evidence,’ [the court] must conclude that there is a ‘conspicuous absence of credible choices’ or ‘no contrary medical evidence.’” *Dellolio v. Heckler*, 705 F.2d 123, 125 (5th Cir. 1983)). Even if the court should determine that the evidence preponderates in the claimant’s favor, the court must still affirm the Commissioner’s findings if there is substantial evidence to support these findings. *See Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). The resolution of conflicting evidence is for the Commissioner rather than for this court. *See Patton v. Schweiker*, 697 F.2d 590, 592 (5th Cir. 1983) (per curiam).

For purposes of social security determinations, “disability” means an inability to engage in substantial gainful activity because of any medically determinable physical or mental impairment or combination of impairments that could be expected either to result in death or to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled, the Commissioner uses a five-step sequential

inquiry. *Leggett*, 67 F.3d at 563; *Martinez*, 64 F.3d at 173-74. The Commissioner must consider whether (1) the claimant is presently working; (2) the claimant's ability to work is significantly limited by a physical or mental impairment; (3) the claimant's impairment meets or equals an impairment listed in Appendix 1, Subpart P, Regulation No. 4; (4) the impairment prevents the claimant from doing past relevant work; and (5) the claimant cannot presently perform relevant work that exists in significant numbers in the national economy. *Leggett*, 67 F.3d at 563 n.2; *Martinez*, 64 F.3d at 173-74; 20 C.F.R. § 404.1520 (2004). "The burden of proof is on the claimant for the first four steps, but shifts to the [Commissioner] at step five." *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994) (per curiam) (citing *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989) (per curiam)). At step five, once the Commissioner demonstrates that other jobs are available to a claimant, the burden of proof shifts to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) (per curiam).

When determining the propriety of a decision of "not disabled," this court's function is to ascertain whether the record considered as a whole contains substantial evidence that supports the final decision of the Commissioner, as trier of fact. The court weighs four elements of proof to decide if there is substantial evidence of disability: (1) objective medical facts;

(2) diagnoses and opinions of treating and examining physicians; (3) the claimant's subjective evidence of pain and disability; and (4) age, education, and work history. *Martinez*, 64 F.3d at 174 (citing *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam)).

"The ALJ has a duty to develop the facts fully and fairly relating to an applicant's claim for disability benefits." *Ripley*, 67 F.3d at 557. "If the ALJ does not satisfy [this] duty, [the] decision is not substantially justified." *Id.* Reversal of the ALJ's decision is appropriate, however, "only if the applicant shows that [she] was prejudiced." *Id.* The court will not overturn a procedurally imperfect administrative ruling unless the substantive rights of a party have been prejudiced. *See Smith v. Chater*, 962 F. Supp. 980, 984 (N.D. Tex. 1997) (Fitzwater, J.).

III

Herring argues first that the ALJ's finding that she was not wholly credible is not supported by substantial evidence.

A

Herring's argument appears to consist of several parts that are at least somewhat related. She focuses initially on the following finding of the ALJ and compares the content of the exhibit he cites (Exhibit 7F) with the testimony that she gave at the hearing. The ALJ found:

> One strong indication of the credibility of an individual’s statements is their consistency, both internally and with other information in the case record (SSR 96-7p). In this regard, while the medical evidence shows that the claimant’s mental impairment has stabilized, the testimony by both the claimant and her mother suggested substantially more limitations in her daily activities than were reported in November 2002 (Exhibit 7F).

R. 15. In Exhibit 7F, which consists of the diagnosis and underlying report of Samir C. Wahby, M.D. (“Dr. Wahby”), a consultative examining psychiatrist, the following is recounted as “FUNCTIONAL INFORMATION”:

> Her activities of daily living consist of watching TV. She will shower, cook and do the laundry. She will go to the grocery store with her mother and to the mall with her mother. She has many friends and they will visit her. She likes to read. She will phone her friends. She likes to go shopping and to exercise.

R. 142. In the finding that Herring addresses, the ALJ essentially concluded that Herring’s credibility could be questioned because the medical evidence shows that her mental impairment has stabilized, and she and her mother testified to substantially more limitations in her daily activities than Dr. Wahby reported in his consultative examination report of November 15, 2002.

Herring attempts to demonstrate that the testimony and exhibit are not inconsistent and can be reconciled. She urges that the exhibit does not contain detail like that given at the hearing or an explanation of how she performs the activity, and she explains

why her hearing testimony can be harmonized with the exhibit and why her description of her daily activities is not contradicted by, and in fact supports, her claims of disability.

Herring next cites SSR 96-7p, *Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p, 1996 WL 374186 (S.S.A.) (1996), and posits that the ALJ must state his reasons for his finding concerning her credibility.

Herring also argues that her description of her activities does not contradict her claims of disability and that there is no evidence in the record that contradicts her testimony, so the ALJ's finding that she lacks credibility is not supported by substantial evidence. She maintains that the ALJ's credibility conclusions are all based on Exhibit 7F, Dr. Wahby's report. She advances the conclusory assertion that the report is not substantial evidence, suggesting (without clearly saying so) that this is because he is a physician who examined her at the request of the Social Security Administration. Herring then quotes this part of Dr. Wahby's prognosis: "She still has psychomotor retardation with a flat affect from the medication. She has difficulty functioning and has free-floating anxieties and fears." R. 143. She asserts that this statement is consistent with her hearing testimony and does not support the ALJ's finding that her testimony is not credible. Herring maintains that it is clear from the evidence that she has

bipolar disorder, depression, mood swings, anxieties, and fears that limit her functioning. She also complains that the ALJ failed to address her mother's testimony concerning caring for Herring's medications, which she maintains bolsters her credibility.

Finally, Herring argues that the ALJ did not specify the degree of credibility (if any) that he accorded her testimony, and there is no evidence that supports the finding that she is not wholly credible.

B

The court concludes that Herring has failed to establish reversible error.

As a threshold matter, the court must place in their proper context Herring's arguments that are based on the specific ALJ finding that she quotes in her motion. The finding that Herring challenges begins with this statement: "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record[.]" R. 15. This a direct quotation of a provision of SSR 96-7p. Viewed in tandem with the text of SSR 96-7p, it is apparent that, at this point in his decision, the ALJ was addressing the subject of "consistency," which is one of the "additional guidelines for the adjudicator to consider when evaluating the credibility of an individual's statements." SSR 96-7p, 1996 WL 374186, at *5. This is not, however, the ALJ's *only* finding concerning Herring's

credibility. These findings begin at page 4 of his decision, R. 14, and continue through page 5, R. 15. The ALJ's "consistency" finding is simply one component of a broader discussion of his assessment of her credibility.[2]

Nor is Herring correct in contending that the ALJ failed to state his reasons, as required by SSR 96-7p. SSR 96-7p provides, in relevant part, that

> [t]he determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2. The ALJ's specific reasons are found at pages 4 and 5 of his decision. *See* R. 14-15. After considering her testimony and that of her mother, he found that she had shown "the existence of an underlying medically determinable impairment that could reasonably be expected to produce some functional limitations." R. 15. But he also found from the record

---

[2]Inexplicably, the Commissioner responds to Herring's first argument by discussing why it is within the ALJ's province to assess whether complaints of *pain* are credible. *See* D. Br. at 4. As Herring points out in reply, however, she "is not alleging pain, but rather a mental impairment as the cause of her disability." P. Rep. Br. at 2. The court finds it necessary to emphasize anew the importance of the Commissioner's responding to the arguments the plaintiff actually raises in her brief, *see Frames ex rel. Rollins v. Barnhart*, No. 3:03-CV-0924-D, slip op. at 7-9 (N.D. Tex. June 23), *appeal docketed*, No. 04-11028 (5th Cir. Aug. 30, 2004), rather than, as here, addressing an assertion that is not made.

that she did “not have to be entirely free of symptoms to have the [RFC] to engage in substantial gainful activity[,]” that “[t]he record shows that [she] engages in a wide range level of daily activities[,]” and that “[h]er medication is shown to be effective when [she] is compliant with her treatment program.” R. 15. He found that her “symptoms have no substantial [e]ffect on her ability to work beyond the functional limitations and restrictions indicated by the medical evidence[,]” and that her “nonexertional capabilities are compromised, but not to the degree alleged (*i.e.*, an inability to work in any capacity).” The ALJ found further that her testimony was not consistent with the medical evidence that shows that her mental impairments have stabilized and that demonstrates substantially fewer limitations than those to which she and her mother testified. *Id.* The ALJ was not required, as Herring contends, to specify *the degree* of credibility that he accorded her testimony.

The remaining arguments that Herring advances all essentially present the same contention: that the ALJ’s credibility finding is not supported by substantial evidence because the medical evidence is consistent with, and no medical evidence contradicts, her testimony. Assuming *arguendo* that Herring can focus on one component of the ALJ’s broader credibility findings and attempt to establish reversible error, the court holds that she has not.

Credibility determinations are generally the province of the

ALJ, and his credibility evaluations are entitled to deference. *See Carrier v. Sullivan*, 944 F.2d 243, 244 (5th Cir. 1991). Substantial evidence "is more than a mere scintilla, and less than a preponderance." *Spellman*, 1 F.3d at 360. To find no substantial evidence, this court "must conclude that there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Dellolio*, 705 F.2d at 125. The court holds that the ALJ's findings concerning Herring's credibility are supported by substantial evidence that she has some functional limitations, but still retains the RFC to engage in substantial gainful activity; her medication is effective when she complies with her treatment program; her mental impairment has stabilized; and her daily activities, as reported in November 2002, are not limited to the degree to which she and her mother testified. Herring refused any medications during the period of her treatment in July 2002, R. 126 (twice noting that "she refused meds"), but a progress note dated July 15, 2002 from Cecile Soliven, M.D. recounts that Herring "report[ed] good response to current medication." R. 156. In November 2002 Dr. Wahby reported that, on a daily basis, Herring watches television, showers, cooks, and does laundry. R. 142. She likes to read, telephone friends, go shopping, and exercise. Her sleep pattern is normal, and she likes music, drawing, crochet, and painting. She also helps her mother around the house. Although she sometimes leaves the stove on, this is because she gets

preoccupied and has difficulty concentrating. *Id.* Dr. Wahby reported that Herring was oriented times three, did not express delusions, denied having hallucinations now that she used her medications, and was able to perform satisfactorily on standard mental exercises. *Id.* Michael H. Brophy, M.D., a treating physician, noted on April 23, 2003 that Herring "has done pretty well" on her medications. R. 115. This evidence is more than a scintilla and thus constitutes substantial evidence.

Accordingly, the court holds that Herring has failed to demonstrate that the Commissioner's decision should be reversed on the first ground presented.

IV

Herring contends second that the ALJ's failure to give controlling weight to the medical evidence from her treating physician is not supported by substantial evidence.

A

Herring maintains that the ALJ failed to assign the amount of weight to any of her medical records; he did not refer to or mention her medical records in his decision, except for Exhibit 7F (Dr. Wahby's consultative examination report); it is unclear what weight the ALJ gave to any medical reports in the record, and it must be assumed that he did not give controlling weight to her treating physician, Dr. Brophy; had controlling weight been given to the treating physician, a finding of disabled would have been

entered; based on the factors specified in 20 C.F.R. § 404.1527(d),[3] controlling weight should have been given to the medical evidence and medical opinions of Dr. Brophy and substantial weight should be given to the medical evidence from her treatment in two hospitals; the ALJ is required to explain the weight given or rejection of a treating physician's medical opinion and present good cause for not giving considerable weight to the opinion of a treating physician, but he did not provide an explanation for his failure to give controlling weight, and there are no good grounds for him not to have given controlling weight to the treating physician's records and medical opinions; and the ALJ erred as a matter of law in failing to set out the weight he gave to the medical evidence and to explain his failure to give considerable weight to the treating physician, and there is no substantial evidence to support a finding that her treating physician should not be given controlling weight.

---

[3]Herring does not base a claim of error on the ALJ's failure to address the six factors under § 404.1527(d). Such an assertion, however, would have been misplaced, at least for the reason that Herring has not shown that the ALJ rejected or gave little weight to Dr. Brophy's opinion. *See Murphy v. Barnhart*, No. 3:02-CV-2741-D, slip op. at 2 (N.D. Tex. Feb. 9, 2004) (Fitzwater, J.) ("Under [*Newton v. Apfel*, 209 F.3d 448 (5th Cir. 2000),] the ALJ 'is required to consider each of the § 404.1527(d) factors when the ALJ intends to reject or give little weight to a treating specialist's opinion[,]'" (quoting *Newton*, 209 F.3d at 455) (emphasis omitted)).

B

The court rejects Herring's arguments. First, Herring does not identify in her motion the opinion of Dr. Brophy that she contends the ALJ should have, but did not, give controlling weight. Nor does she explain how the unidentified opinion supports her claim that she is disabled. Accordingly, there is no indication in the ALJ's decision that he did not in fact give the opinion controlling weight. Although Herring argues that she has bipolar disorder, depression, mood swings, anxieties, and fears that limit her functioning, the ALJ explicitly recognized that her bipolar disorder is "severe" (although not sufficiently so to meet or equal a listing), R. 14, so it is doubtful that this is Herring's basis for contending that the ALJ rejected Dr. Brophy's opinion. Otherwise, she simply advances the conclusory assertion——without specifying the medical opinion on which she relies——that "[h]ad controlling weight been given to the treating physician[ ], a finding of disabled would have been entered." P. Mot. at 5. She has not established reversible error on this basis. *See, e.g., Caldwell v. Barnhart*, No. 3:04-CV-2546-D, slip op. at 16 (N.D. Tex. Aug. 17, 2005) (Fitzwater, J.) ("Because [the plaintiff] has not demonstrated that [the treating physician's] opinion regarding his ability to sit for a maximum of two hours is inconsistent with the ALJ's findings, he has not shown that he was prejudiced by the ALJ's rejection of this opinion.").

Second, Herring has failed to cite in her motion any authority that requires an ALJ to explain the weight given to a treating physician's opinion when, as here, there is no indication that the ALJ declined to give the opinion controlling weight. The Fifth Circuit has rejected a rule requiring the ALJ to "articulate specifically the evidence that supported his decision and discuss the evidence that was rejected." *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994).[4]

Third, assuming the ALJ was obligated to provide such an explanation, Fifth Circuit jurisprudence makes clear that the ALJ may give less weight or even no weight to a treating physician's opinion for good cause. Statements that may be disregarded for good cause include those that are "so brief and conclusory that [they lack] persuasive weight, [are] not supported by medically acceptable clinical laboratory diagnostic techniques, or [are] otherwise unsupported by the evidence." *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985) (citations omitted). Because Herring has not identified the opinion of Dr. Brophy that she says should have been given considerable or controlling weight, the court cannot assess whether it is so brief or conclusory that the ALJ could have

---

[4]Although it is not clear that Herring intends to cite *Myers v. Apfel*, 238 F.3d 617 (5th Cir. 2001) (per curiam), in support of this premise, *see* P. Mot. at 6, the court notes that *Myers* addressed, in pertinent part, the need for a function-by-function analysis of a claimant's functional limitations. *Myers* does not make the more detailed determination of what evidence and analysis must be narratively presented in the decision itself.

disregarded it on that basis, assuming, of course, that he actually rejected Dr. Brophy's opinion.

Fourth, because Herring has not identified Dr. Brophy's opinion, the court cannot ascertain whether any error by the ALJ in the procedure he followed caused her prejudice. *See Shave v. Apfel*, 238 F.3d 592, 597 (5th Cir. 2001) (concluding that SSA's failure to follow its own rules is not basis for relief from ALJ's decision unless claimant can show prejudice).

The court holds that Herring has failed to demonstrate reversible error on this basis.

* * *

For the reasons set forth, Herring has failed to establish that the ALJ committed reversible error. The decision of the Commissioner is therefore AFFIRMED.

September 7, 2005.

SIDNEY A. FITZWATER
UNITED STATES DISTRICT JUDGE